268 So.2d 481

**BAGGETT TRANSPORTATION CO., a Corp. and Alabama Public Service Commission**

v.

**KING MOTOR LINES, INC.**

3 Div. 474.

Supreme Court of Alabama.

Aug. 24, 1972.

Rehearing Denied Nov. 22, 1972.

William J. Baxley, Atty. Gen., Charles H. Barnes, Asst. Atty. Gen., Carl Evans, for Public Service Commission.

Henry E. Simpson, Birmingham, for Baggett Transp. Co.

John P. Carlton, Birmingham, for Georgia-Florida-Alabama Transp. Co., intervenor.

**436**

Euel A. Screws, Jr., Montgomery, for appellee.

PER CURIAM.

Baggett filed a complaint before the Alabama Public Service Commission contending that King Motor Line was transporting freight between Mobile and Montgomery without authority to do so. The Alabama Public Service Commission construed the authority of King and concluded that it had no authority to haul freight between these two points. King appealed to the Circuit Court of Montgomery County and the court held that King did have authority to transport freight between Mobile and Montgomery. This appeal followed.

The facts were stipulated below. We have before us transcripts of the proceedings held at the times King was granted its authority. The single question is whether or not the restriction imposed by the Public Service Commission on King's authority prohibits King from transporting freight which originates at points other than Mobile or Montgomery, but which it picks up at these points. It is King's position that the restriction does not prohibit it from hauling freight which originated at points other than Montgomery or Mobile and the destination of which is to or through Montgomery or Mobile. Baggett contends that the restriction on King's authority prohibits it from hauling any freight between Montgomery and Mobile, regardless of the origin of the freight.

King was originally granted authority by the Public Service Commission in Certificate No. 550 to transport traffic moving between Mobile and Greenville, Alabama, over Highway 31, serving intermediate points. Subsequently, King sought an amendment to its certificate to allow it to transport freight between Greenville and Montgomery. This additional authority was granted, but it was restricted in the following language:

"RESTRICTION: The authority herein granted is specifically restricted so as to prohibit the holder of Alabama

Public Service Commission Certificate No. 550 from transporting freight originated by such holder at Montgomery, Alabama, destined to or through Mobile, Alabama, and transporting freight originated at Mobile, Alabama, destined to or through Montgomery, Alabama."

The question before the Public Service Commission was the meaning of this language. It found that the restriction "was intended to prohibit King from transporting any traffic from Mobile to Montgomery or from Montgomery to Mobile regardless of whether the freight was interlined or not."

We think the record of the proceedings held at the time King applied for additional authority supports the interpretation placed on this language by the Commission. In that proceeding several carriers protested the granting of authority between Mobile and Montgomery. In granting King authority from Greenville to Montgomery the Commission noted:

"However, with regard to the concern and interest of protestants relating to the probability of a new competitor specifically between Montgomery and Mobile, Alabama, the Commission is of the opinion that protestants should be afforded protection against such new competition. The grant of authority in this case will be restricted to provide such protection."

It thereafter included the above restriction in the additional authority extended to King.

The Commission had another occasion to consider the meaning of the restriction when in July, 1968 King sought additional authority and at that time attempted to get the above restriction removed. The following excerpt from the proceedings held before the Commission at that time is extremely helpful in understanding what was intended by the restriction:

"EXAM. BLACK: * * * As I understand it, Mr. Richard, your client [King] now interprets this restriction as authorizing it to transport shipments from beyond Montgomery destined to Mobile and shipments from beyond Mobile destined to Montgomery? Your restriction, you say your client believes, is restricted or limited to shipments originating in Montgomery destined to Mobile and beyond, * * * or Mobile destined to Montgomery and beyond?

* * * * * * *

"MR. HUDSON [King's president]: That's correct. It was based on the fact of the word 'originate'. I believe the restriction verbatim says 'any traffic originating in Montgomery and destined to or through Mobile or any traffic originating in Mobile destined to or through Montgomery.' So on the basis of the traffic 'originating', it had been my assumption and opinion that it meant what I had interpreted it to be, meaning that traffic would actually originate in this town limited to carrier solicitation from Mobile to Montgomery and beyond but not limited to . . .

"EXAM. BLACK: Beyond Mobile to Montgomery.

"MR. HUDSON: From Birmingham to Mobile, if a carrier elected to interline it with him through way of Montgomery. The word 'originating' is the basis on which I had been using the application.

* * * * * * *

"MR. RICHARD: May it please the Commission, subject to Mr. Hudson calling me down as being out of order, I handled the original application for King Motor Lines, as the Commission knows, and I would have to state quite frankly for the record that it was my understanding that the restriction was meant to keep King Motor Lines from handling traffic between the two points of Montgomery and Mobile—I don't care where it came from—and I can't take issue with Mr. Hudson's . . . the way he reads this restriction, because the restric-

tion says 'originated by such holder', and I can understand his position, but it would be my best judgment and it would be my advice to Mr. Hudson and the Applicant's chief counsel that the Applicant take the position in this matter that no traffic would be handled between these two points, whether it be interlined or whether it be originated at, and Mr. Hudson can take that advice or not. * * *

* * * * * * *

MR. RICHARD: * * * Mr. Hudson, did you hear my remarks a moment ago on the record relative to my advice to you and what my interpretation of what this means?

"MR. HUDSON: I certainly did.

"MR. RICHARD: And are you agreeable to taking the position that the restriction that was talked about earlier in this hearing would be applied to any authority that you might be granted as a result of this application and would prohibit King Motor Lines from originating or receiving interline traffic at either Mobile or Montgomery destined to the other point?

"MR. HUDSON: I do.

"MR. RICHARD: You cannot transport traffic between Mobile and Montgomery no matter where the traffic comes from

"MR. HUDSON: Right."

* * * * * *

Recross by Mr. Jackson (representing one of the protesting carriers):

"Q. So then, Mr. Hudson, you would not propose to transport any more shipments—King Motor Lines would not propose to transport any more shipments from Clanton, Alabama, to Mobile after receiving them interline from Montgomery?

"A. No.

"Q. And the same would be true of any other points?

"A. Yes."

It is conceded by all parties to this appeal that the single question involved is whether or not the restriction quoted above prohibits King from transporting "interline" traffic from Mobile to Montgomery. King takes the position that the restriction prohibits it only from transporting between these points traffic which "originates" in the two cities and is destined to the other and that it is free to carry freight which it picks up "interline", i. e. from another carrier in one of these cities or traffic which "originated" in some point other than these two cities. We do not think that this interpretation of the restriction is consistent with the intention of the Commission as revealed in the record of the proceeding wherein it was imposed and further revealed in the record of the proceedings wherein it was sought to have it removed. Rather, we think these records indicate just the contrary. We further think it is demonstrated by the record that the use of the words "originated by such holder" was intended to mean what it said, i. e. that the holder of the certificate was prohibited from carrying any freight which is "originated" in Mobile, the destiny of which is to or through Montgomery. The words "by the holder" must be given some meaning. The position of King is that the key word is "originated" and that the word refers to traffic "originated" at some point other than Mobile or Montgomery. But to so construe the word "originated" to mean "traffic originated at some point other than Mobile" would leave the words "by such holder" without any meaning at all. We do not think this was intended by the Commission.

The court below and King here rely heavily on Murray v. Service Transport, Inc., 254 Ala. 683, 49 So.2d 221 (1950). In that case this court construed a restriction which read as follows:

" 'Restrictions. Under this extended operating authority applicant is restricted from transporting any freight whose

origin is Montgomery and destination Mobile, or whose origin is Mobile and destination is Montgomery.' "

The question in that case, as this, was whether the carrier could accept freight in Montgomery from connecting carriers and transport the same to Mobile, where the shipment did not originate in Montgomery. The court noted that the question was, as here, one of interpretation or construction and held that the carrier was not prohibited from carrying freight which originated at a point other than Montgomery and whose destination was a point other than Mobile and vice versa.

The opinion goes on to say:

"So far as we are here concerned, appellee operates between Montgomery and Mobile, but it cannot transport freight whose origin is Montgomery and destination Mobile or whose origin is Mobile and destination Montgomery. Certainly the Public Service Commission was familiar with the existence of connecting carriers and the interchanging of freight between them. Let us assume that a shipment of freight originates in Mobile and its destination is Birmingham, via. Montgomery. It originated in Mobile but its destination is not Montgomery. Assume that a shipment originated in Birmingham and its destination is Mobile, via. Montgomery. Its destination is Mobile, but it did not originate in Montgomery. Like situations would be created in shipments originating in Montgomery whose destination is beyond Mobile, and shipments originating beyond Mobile and whose destination is Montgomery." In holding that the carrier was not prohibited by the restriction from carrying such freight, the court said,

"If the Public Service Commission had intended to further restrict appellee's certificate it seems that there was ample authority and opportunity to do so, and it certainly knew how. In so close a question we are reluctant to add words and thoughts to the restriction in order that it may be interpreted to mean other than just what it says."

We think the restriction in this case is far more restrictive than that in *Murray*. In it the holder is restricted from hauling any freight originated by such holder at Montgomery destined to or through Mobile. In *Murray* the words "origin" and "destination" referred to freight. Here the words are "originated by such holder" at Mobile or Montgomery and the restriction says that it cannot carry such freight if it is destined to or through the other point. In *Murray* the restriction did not prohibit the carrier from hauling freight unless its origin was Montgomery and its destination was Mobile or vice versa. Here the carrier cannot carry freight if it is destined to or through Mobile or Montgomery if it was originated by the holder in the other city. We believe this is the only interpretation of the language used by the Commission which would give effect to every word employed in the restriction. The holding of the trial court would leave without meaning the words "by such holder" and we assume that the Commission intended every word it used to have some meaning. Alabama Public Service Commission v. AAA Motor Lines, Inc., 272 Ala. 362, 131 So.2d 172 (1961).

The decree appealed from is therefore reversed and rendered.

Reversed and rendered.

HEFLIN, C. J., and COLEMAN, HARWOOD, BLOODWORTH and McCALL, JJ., concur.